UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTEM SHUSHKOV,

    *Plaintiff*,

v.

MARCO RUBIO, *et al.*,

    *Defendants.*

Civil Action No. 24 - 2265 (LLA)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Artem Shushkov, a Russian national residing in Serbia, seeks to compel Defendants—Marco Rubio, in his official capacity as Secretary of State, and Timothy W. Smith, in his official capacity as Director of the Office of Screening, Analysis, and Coordination ("SAC") at the U.S. Department of State—to adjudicate his immigration visa application.  ECF No. 1.[1] Mr. Shushkov contends that his F-1 visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., and the Mandamus Act, 28 U.S.C. § 1361.  ECF No. 1 ¶¶ 77-115.  Defendants have moved to dismiss Mr. Shushkov's claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 5.  For the reasons explained below, the court will grant the motion to dismiss in part and deny the motion to dismiss in part.

---

[1] Although Mr. Shushkov named former Secretary of State Antony J. Blinken and former SAC Director Robert Jachim as Defendants, Secretary Rubio and Director Smith are "automatically substituted" as parties under Federal Rule of Civil Procedure 25(d).

I.     **BACKGROUND**

The court draws the following facts, accepted as true, from Mr. Shushkov's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") provides that a noncitizen "who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely" to pursue the course of study may apply for an F-1 visa. 8 U.S.C. § 1101(a)(15)(F)(i). To obtain an F-1 visa, the foreign national must complete several steps. *See* U.S. Dep't of State, *Student Visa*, https://perma.cc/2CC7-2J95. First, the applicant must electronically submit a Form DS-160 to the consular office corresponding to the jurisdiction in which he resides. 22 C.F.R. §§ 41.101(a), 41.103(a). Typically, the applicant must undergo an in-person interview with a consular officer. 8 U.S.C. § 1202(h). At the end of the interview, State Department regulations require that the consular officer either issue or refuse the visa. 22 C.F.R. § 41.121(a); *see Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022). However, if the consular officer determines that he needs further information, he may "refuse" the visa pending further administrative processing, which typically consists of additional information-gathering, pursuant to Section 221(g) of the INA. U.S. Dep't of State, *Administrative Processing Information*, https://perma.cc/44NK-RVZE; *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In October 2023, Mr. Shushkov filed a DS-160 Application for Nonimmigrant Visa. ECF No. 1 ¶ 43. He sought an F-1 visa to pursue a PhD in Systems Engineering at the Stevens Institute of Technology in New Jersey. *Id.* ¶¶ 41, 43. Mr. Shushkov was interviewed at the U.S. Embassy in Belgrade, Serbia later that month. *Id.* ¶ 44. After the interview, his visa was refused under

Section 221(g) for further administrative processing, and he was informed that he would need to submit additional documentation. *Id.* ¶¶ 3, 44-45; *see* 8 U.S.C. § 1201(g). Mr. Shushkov provided the requested documents. ECF No. 1 ¶ 45. He has since sent several inquiries to the embassy about the status of his application but has received no new information. *Id.* ¶¶ 46-47.

The delay in the adjudication of Mr. Shushkov's visa since October 2023 has caused Mr. Shushkov "severe and particular harm" by risking his admission and funding in the PhD program and inducing "immense stress and anxiety." *Id.* ¶¶ 49-50, 54. Mr. Shushkov also alleges that he is unable to obtain full-time work in Serbia while he awaits his visa decision. *Id.* ¶ 51.

In August 2024, Mr. Shushkov filed a complaint seeking to compel the final adjudication of his visa application. ECF No. 1. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. The matter is fully briefed. ECF Nos. 5 to 9.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the

complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B.      Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

4

### III.   DISCUSSION

Defendants raise two primary challenges to Mr. Shushkov's claims: (1) that the doctrine of consular nonreviewability bars consideration of his claims, ECF No. 5 at 10-13; and (2) that Mr. Shushkov fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 5-10.[2]  The court considers each argument in turn.

#### A.   Consular Nonreviewability

Defendants argue that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability.  ECF No. 5, at 10.[3]  In the context of visa adjudications, "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see Dep't of State v. Muñoz,* 602 U.S. 899, 908 (2024).  However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11 (collecting cases).

---

[2] In a departure from similar cases, Defendants do not argue for dismissal based on the factors set forth in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"), the very analysis *required* to evaluate a claim of unreasonable delay.  ECF No. 5, at 1.  Instead, in a footnote, Defendants claim that they will move for judgment on the pleadings based on the *TRAC* factors *if* the court denies their motion to dismiss. *Id.* at 1 n.1.  While allowed by the Federal Rules of Civil Procedure, Defendants' approach strikes the court as an exercise in gamesmanship that increases litigation costs for the parties and taxes limited judicial resources.  The court encourages Defendants to litigate more efficiently in the future.

[3] It is well established that the doctrine of consular nonreviewability is not jurisdictional.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

5

In response to this longstanding precedent, Defendants point to the D.C. Circuit's decision in *Karimova v. Abate*, No. 23-CV-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate." ECF No. 5, at 12. In Defendants' view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been rendered on the application. ECF No. 7, at 14; *see Karimova*, 2024 WL 3517852, at *2-3, *6. The court disagrees.

As an initial matter, the court notes—contrary to Defendants' assertion, ECF No. 5, at 6 n.2; ECF No. 7, at 4—that the D.C. Circuit's decision in *Karimova* does not bind it. The D.C. Circuit has twice declined to publish *Karimova*. *See Karimova*, 2024 WL 3517852, at *6; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1. Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[4] This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

---

[4] Defendants cite D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "may be cited as precedent," ECF No. 7, at 4 (quoting D.C. Cir. R. 32.1(b)(1)(B)), which is true as far as it goes. But as the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are 'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). Accordingly, these decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id.* Other than their say-so, ECF No. 7, at 4, Defendants have pointed to no authority suggesting that this court should take a different approach.

Having considered *Karimova*, the court is not inclined to follow it. In *Karimova*, the plaintiff was in a position substantially similar to Mr. Shushkov's: she had applied for a visa, interviewed at an embassy, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing. 2024 WL 3517852, at *2 (quoted sources omitted). Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must be a "final" decision because a relevant regulation instructed that a consular officer "*must* issue" or "refuse" a visa following an interview, *id.* at *1 (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id.* (quoting 9 FAM § 504.1-3(g)). Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance. *Id.* at *6.

This interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process. *See Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free card . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (citation omitted) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))).

It is impossible to square Defendants' assertion that placement in "administrative processing" was a *final* disposition of Mr. Shushkov's visa application with the allegations in his complaint. Mr. Shushkov alleges that, after his interview, he "was informed that he would need further administrative processing and would need to submit additional documents," and he then "received an email confirming that he needed to respond to a DS-5535 questionnaire and submit additional documents." ECF No. 1 ¶¶ 44-45. Accepting these allegations as true and drawing all inferences in Mr. Shushkov's favor—as this court must, *see Iqbal*, 556 U.S. at 678—Mr. Shushkov has sufficiently alleged that he has not yet received a final decision on his visa application. *See Aramnahad*, 2025 WL 973483, at *8; *cf. Ibrahim v. Spera*, No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates").

Additionally, Defendants' reliance on the FAM for the proposition that a Section 221(g) refusal for administrative processing is a final decision ignores the fact that, until very recently, the FAM referred to cases in administrative processing as ones where "a final determination is deferred." ECF No. 1 ¶ 38 (quoting ECF No. 1-2). Defendants may have amended the language in the FAM, but "administrative processing" remains the same: a non-final disposition that may or may not be changed by an applicant's supplementation of his application.[5]

---

[5] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice. *See Arab*, 600 F. Supp. 3d at 63 n.1. The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude [a person] w[as] elegible [sic] for the visa sought and additional administrative processing of [the] application is required." U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/27VZ-FMBN. It further elaborates that a person who

(*continued on next page*)

Mr. Shushkov does not challenge a final decision denying his visa application, nor does he contend that this court should order the State Department to grant his application. *See generally* ECF No. 1.  Rather, he argues only that Defendants must "adjudicate [his] visa application within a reasonable time." *Id.* ¶ 27.  Several courts in this district have found, even after *Karimova*, that "the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance." *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-5 (D.D.C. Mar. 11, 2025); *Baygan v. Blinken*, No. 23-CV-2840, 2024 WL 3723714, at *4-5 (D.D.C. Aug. 8, 2024).  This court follows suit and determines that Mr. Shushkov's action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered.  Accordingly, the case is not barred by the doctrine of consular nonreviewability.[6]

---

is placed in administrative processing "will be given a letter stating this[,] and the embassy or consulate will contact [him] when the administrative processing is complete." *Id.*  An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa.  And the language on the website, which instructs applicants to wait for the embassy or consulate to contact them after administrative processing is complete, supports the court's conclusion that an applicant in this position is still awaiting a final decision on his application.

[6] The upshot of this conclusion for Defendants is that the court will dismiss Mr. Shushkov's claims that are premised on Section 706(2) of the APA (Counts I and III), because Section 706(2) is limited to "final agency action," which has not yet occurred here. *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)); *see Lee v. Blinken*, No. 23-CV-1783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (dismissing a Section 706(2) claim for lack of final agency action where the plaintiff's visa was placed in administrative processing after a Section 221(g) refusal).

## B.   Non-Discretionary Duty

Defendants also contend that Mr. Shushkov has failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim and a merits question for a claim of unreasonable delay under the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 5, at 5.[7] Defendants argue that Mr. Shushkov "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action" on his visa application "now that it has been refused under INA Section 221(g)" and placed in administrative processing. ECF No. 5, at 5. As support for this proposition, Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this one, where "[p]laintiffs seek to compel State Department officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing." *Id.* at 6.

In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." 2024 WL 3517852, at *6. The Court characterized the plaintiff as "argu[ing] that Section 555(b) [of the APA]—and

---

[7] Defendants waffle on whether they are seeking dismissal on this basis under Rule 12(b)(1) or Rule 12(b)(6) and fail to parse through the individual counts in the complaint. *Compare* ECF No. 5, at 5 (asking for a dismissal with prejudice concerning non-discretionary duty), *with* ECF No. 7, at 13 (invoking Rule 12(b)(1) as the basis for a dismissal concerning non-discretionary duty). Under the Mandamus Act, a plaintiff must show (1) "a clear and indisputable right to relief," (2) that the government "is violating a clear duty to act," and (3) "that no adequate alternative remedy exists" in order to establish jurisdiction. *Burwell*, 812 F.3d at 189. The court will thus review Count IV under the Rule 12(b)(1) standard. In contrast, under the APA, the question whether a non-discretionary duty exists is not jurisdictional. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (explaining that "a complaint seeking review of agency action 'committed to agency discretion by law,' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)" (citation omitted) (quoting 5 U.S.C. § 701(a))). The court will thus review Count II under the Rule 12(b)(6) standard.

10

only Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application." *Id.* at *3. The Court easily determined that "Section 555(b) does no such thing," and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'" *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")).

The problem for Defendants is that this rationale is wholly inapplicable given this court's understanding of the visa process. *See supra* Part III.A. It may be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision where one has already been made, but, as this court sees it, that is not what plaintiffs like Mr. Shushkov (or Ms. Karimova) are seeking. Instead, they are seeking an initial, final determination on their visa applications. In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for a plaintiff who seeks an initial final decision and wishes for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires. *TRAC*, 750 F.2d at 77.

Here, Mr. Shushkov alleges that a nondiscretionary duty to adjudicate his visa application can be located in a wide range of "statutes, precedents, agency regulations, and guidelines," including 5 U.S.C. § 555(b), 8 U.S.C. § 1202(e), 22 C.F.R. § 41.121(a), multiple sections of the FAM, the INA, and the APA. ECF No. 1 ¶¶ 58-68. Several courts in this district have concluded that there is a duty to complete adjudication of a visa application, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see also, e.g.*, *Aramnahad*, 2025 WL 973483, at *8-10; *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024); *Vulupala*, 438 F. Supp. 3d at 100. This

11

court continues to agree with this view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").[8]

\* \* \*

Because Mr. Shushkov's claims are not barred by the doctrine of consular nonreviewability, because, in Counts II and IV, Mr. Shushkov seeks a final determination on his visa application by pointing to several sources of law creating a nondiscretionary duty for Defendants to make such a decision, and because Defendants fail to otherwise contest Mr. Shushkov's claims of unreasonable delay, the court determines that Mr. Shushkov may proceed on Counts II and IV of his complaint.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 5, is **DENIED** as to Counts II and IV and **GRANTED** as to Counts I and III. It is further

---

[8] Even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, Mr. Shushkov could still proceed with Counts II and IV. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a nondiscretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and only Section 555(b) . . . does no such thing." 2024 WL 3517852, at *3. Even if this court discounted Section 555(b), Mr. Shushkov has cited ample additional sources of law that he contends establish a nondiscretionary duty to adjudicate his visa application. ECF No. 1 ¶¶ 58-68. At this early stage of litigation, that is sufficient.

**ORDERED** that Defendants shall respond to Mr. Shushkov's complaint on or before September 2, 2025.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 18, 2025